**CASE NO. 25-3609**

---

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

---

BOARD OF LUCAS COUNTY COMMISSIONERS *et. al*,
*Plaintiffs*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et. al*.
*Defendants*.

Appeal from the United States District Court for the Northern District of
Ohio, Western Division, Case No. 3:24-cv-00779-JJH, Following the
July 2, 2025, Denial of a Motion to Intervene Filed by the
Maumee Coalition II Association

---

**BRIEF OF MAUMEE COALITION II ASSOCIATION**

---

*Appellant/Proposed Intervening Defendant Below*

---

*/s/ Stephen P. Samuels*
Stephen P. Samuels (007979)
Stephen N. Haughey (0010459)
Christina Wieg (0098693)
**FROST BROWN TODD LLP**
10 West Broad Street
Columbus, OH 43215-3484
(614) 371-8042
ssamuels@fbtlaw.com
shaughey@fbtlaw.com
cwieg@fbtlaw.com
*Counsel for the Maumee Coalition II Association*

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTERESTS

Pursuant to 6th Cir. R. 26.1(a), the Maumee Coalition II Association makes the following disclosures:

1.    Is said party a subsidiary or affiliate of a publicly-owned corporation?  NO

2.    If the answer above is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party.  N/A

3.    Is there a publicly-owned corporation, not a party to the appeal, that has a financial interest in the outcome?  NO

4.    If the answer above is YES, list the identity of such corporation and the nature of the financial interest.  N/A

/s/  *Stephen S. Samuels*                                    Date: November 3, 2025
*Counsel for Appellant Maumee Coalition*

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST…………………………………………………………………ii

TABLE OF CONTENTS........................................................................ iii

TABLE OF AUTHORITIES ................................................................v

STATEMENT REGARDING WAIVER OF ORAL ARGUMENT ......................1

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES FOR REVIEW ............................................2

STATEMENT OF THE CASE................................................................3

SUMMARY OF ARGUMENT ............................................................10

STANDARD OF REVIEW ..................................................................12

ARGUMENT ......................................................................................13

A.    The District Court Abused its Discretion when it Found that (1) U.S. EPA is Presumed to Adequately Represent the Interests of the Coalition's Members, and (2) the Coalition had not Sufficiently Rebutted the Presumption. Intervention as of Right Should have been Granted......................................................................................13

     1.    The Interests of the Coalition and U.S. EPA are not Sufficiently Aligned to Justify a Presumption of Adequate Representation .........14

     2.    Even if the Interests are Sufficiently Aligned to Support the Presumption of Adequate Representation, the Coalition Provided Several Reasons that Rebutted the Presumption ................................18

B.    The District Court Abused its Discretion when it Found that the Coalition's Explanation how its Members' Interests Would be Adversely Impacted if Intervention were Denied Constituted Claims or Arguments that Would Unduly Complicate or Delay Plaintiffs' Challenge. Even if Intervention as of Right was Properly Denied, Permissive Intervention Should have been Granted in the Alternative ........20

C The District Court's Denials of the Coalition's Motion to Intervene and that Filed by the Agricultural Trade Associations Cannot be Reconciled with the District Court's Grant of Intervention to Three Environmental Trade Organizations..........................................................................................22

CONCLUSION.....................................................................................23

CERTIFICATE OF COMPLIANCE.......................................................24

CERTIFICATE OF SERVICE ...............................................................25

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............25

# TABLE OF AUTHORITIES

<u>Cases</u>

*Bradley v. Milliken*, 828 F. 2d 1186 (6th Cir. 1987) ................................................14

*Buck v. Gordon*, 959 F. 3d 219 (6th Cir. 2020) ............................................15,17,19

*Coalition to Def. Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007) ..13

*Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999) ...................................................13

*Michigan State AFL-CIO v. Miller*, 103 F. 3d 1240 (6th Cir. 1997)..................12,13

*NE Ohio Coalition for Homeless and Service Employees Int'l Union Local 1199 v. Blackwell*, 467 F. 3d 999 (6th Cir. 2006)...........................................................14,19

*Purnell v. City of Akron,* 925 F.2d 941 (6th Cir.1991).........................................2,18

*Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370 (1987) .....................2

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1971)......................18

*United States v. Michigan*, 424 F. 3d 438 (6th Cir. 2006)........................................14

<u>Statutes</u>

5 U.S.C. §§ 701 *et. seq*...............................................................................................1

28 U.S.C. § 1331 ..........................................................................................................1

28 U.S.C. § 1291 ..........................................................................................................2

33 U.S.C. §§ 1251 *et seq*.............................................................................................3

33 U.S.C. § 1313(a) and (d)..........................................................................................3

33 U.S.C. § 1362(14) ....................................................................................................3

O.R.C. § 3745.04(B) ...................................................................................................16

O.R.C. § 6111.564(A)..................................................................................................16

Other Authorities

Fed. R. Civ. Pro. 24.................................................................................passim

40 C.F.R. § 130.2 ............................................................................................3

Maumee Watershed Nutrient TMDL FAQs, September 29, 2023
(available at https://www.epa.gov/system/files/documents/2023-09/maumee-
watershed-nutrient-tmdl-faqs.pdf.) ...............................................................5

U.S. EPA, Decision Document for Maumee Watershed Nutrient TMDL, In All or
Parts of 18 Counties in Northwestern Ohio, Sept. 28, 2023
(available at https://www.epa.gov/tmdl/epas-approval-ohios-maumee-watershed-
nutrient-total-maximum-daily-load) .............................................................4

U.S. EPA, Overview of Total Maximum Daily Loads (TMDLs)
(available at https://www.epa.gov/tmdl/overview-total-maximum-daily-loads-
tmdls)...............................................................................................................5

Acronyms

APA (Administrative Procedures Act) ...................................................8,16

CAFOs (Concentrated Animal Feeding Operations)................................5

CWA (Clean Water Act)....................................................................3,4,8,16

DRP (Dissolved Reactive Phosphorus) .............................................5,6,10

MOS (Margin of Safety).....................................................................3,5,6,10

MTI (Motion to Intervene)..............................................................passim

NPs (Nonpoint Sources) .....................................................................3,4,5,6

PSs (Point Sources).........................................................................3,4,5,6,7

TMDL (Total Maximum Daily Load) ............................................passim

WQSs (Water Quality Standards).........................................................3,5

**STATEMENT REGARDING WAIVER OF ORAL ARGUMENT**

Because this appeal involves undisputed material facts and well-settled law, Appellant, the Maumee Coalition II Association ("the Coalition") believes that the decision of the U.S. District Court for the Northern District of Ohio ("the District Court") to deny intervention to the Coalition as an additional party defendant can be decided without oral argument, and therefore waives same.

**STATEMENT OF JURISDICTION**

The Board of Commissioners for Lucas County, Ohio, the City of Toledo, Ohio, and the Environmental Law & Policy Center (collectively "Plaintiffs") filed a Complaint in the U.S. District Court for the Northern District of Ohio on May 1, 2024 (Case No. 3:24-cv-00779-JGC) under 28 U.S.C. § 1331 and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et. seq*., seeking to challenge U.S. EPA's approval of Ohio EPA's (collectively "Agencies") issuance of the Maumee River Watershed Nutrient Total Maximum Daily Load ("Maumee TMDL"). *See* Complaint, RE 1, PAGEID # 5.

The Coalition moved to intervene as an additional party-Defendant on October 31, 2024, seeking intervention as of right or, in the alternative, permissive intervention, under Fed. R. Civ. Pro. 24. *See* Coalition's Motion to Intervene ("MTI"), RE 38, PAGEID # 1503. The District Court denied the Coalition's MTI on July 2, 2025. *See* Memorandum Opinion and Order, RE 68, PAGEID # 2086.

Denial of such motion is an immediately appealable collateral order. *See e.g. Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 375-377 (1987); *Purnell v. City of Akron,* 925 F.2d 941, 944 (6th Cir. 1991). On August 1, 2025, the Coalition filed a timely Notice of Appeal from the District Court's denial. *See* Notice of Appeal, RE 73, PAGEID # 2148. This Court has jurisdiction under 28 U.S.C. § 1291 to decide the Coalition's appeal.

## STATEMENT OF ISSUES FOR REVIEW

1.     Did the District Court commit reversible error when it concluded that the Coalition did not meet the standard for intervention as of right under Fed. R. Civ. Pro. 24(a) because U.S. EPA adequately represented the members' interests against the risk of new, substantially more stringent and costly, permit limits if Plaintiffs prevailed in their challenge to the Maumee TMDL, despite the fact that (1) the Coalition identified several reasons why the Agency's interests and those of the Coalition might not align, and (2) the Coalition's proposed Answer included additional defenses not raised by the Agency that would impact the District Court's jurisdiction to hear Plaintiffs' Complaint?

2.     Did the District Court commit reversible error when it concluded that the Coalition did not meet the standard for permissive intervention under Fed. R. Civ. Pro. 24(b), when there was no dispute that the Coalition's MTI was timely and that no party asserted that intervention would cause prejudice or undue delay; the

Coalition's proposed Answer shared many questions of fact and law with U.S. EPA's Answer and Plaintiffs' Complaint; and the Agency did not object to permissive intervention by the Coalition as an additional Defendant?

## STATEMENT OF THE CASE

Under the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*, each state must adopt and enforce water quality standards ("WQSs") for its navigable waters. *Id*. at § 1313(a). Once adopted, states must periodically identify waters that are impaired due to nonattainment of the WQSs, and submit a list of such waters to U.S. EPA. *Id*. at § 1313(d). States must then develop total maximum daily loads ("TMDLs") for the specific pollutant(s) that are causing or contributing to the impairment, designed to reduce the loadings such that applicable WQSs can be achieved. *Id*.

A TMDL determines a pollutant reduction target, and then, to achieve the target, allocates load reductions, along with a margin of safety ("MOS"), to sources that discharge the applicable pollutants into the impaired waterbody. *See* 40 C.F.R. § 130.2. Sources of pollutants to waterbodies are designated as either "point sources" ("PSs") or "nonpoint sources" ("NPSs"), the former being "discernible, confined and discrete conveyances" to a waterbody, such as a pipe, channel or ditch, and the latter being any source of water pollution other than a point source. 33 U.S.C. § 1362(14).

On September 28, 2023, U.S. EPA approved Ohio EPA's final Maumee TMDL.  It establishes the maximum amount of a nutrient (*i.e.*, total phosphorus) that the Maumee River Watershed can receive from all sources (both PSs and NPSs) within the watershed, and still maintain applicable WQSs.  *See* U.S. EPA, Decision Document for Maumee Watershed Nutrient TMDL, In All or Parts of 18 Counties in Northwestern Ohio, Sept. 28, 2023 (available at https://www.epa.gov/tmdl/epas-approval-ohios-maumee-watershed-nutrient-total-maximum-daily-load) (last accessed October 29, 2025).

Several members of the Coalition were also members of an earlier coalition that actively participated in the process that Ohio EPA employed to develop the TMDL, including submitting detailed comments on the Agency's issuance of the draft document.

In the proceeding below, Plaintiffs allege that Ohio EPA failed to develop the TMDL sufficient to meet the CWA's requirements for TMDLs, and that U.S. EPA's subsequent approval of it was therefore unlawful, arbitrary and capricious.  Complaint, RE 1 at PAGEID # 38-39.  They ask the District Court to vacate the Maumee TMDL, and order U.S. EPA to develop a new TMDL that is substantially different in several ways.  *Id*.  Plaintiffs assert that the Maumee TMDL is flawed in the following respects:

1.     It failed to include total phosphorus limits for Concentrated Animal Feeding

Operations ("CAFOs") as PSs, and failed to apportion total phosphorus load

allocations among all agricultural NPSs of phosphorus;

2.   It failed to include separate nutrient wasteload allocations and discharge

permit limits for a different form of phosphorus, to wit, dissolved reactive

phosphorus ("DRP");[1]

3.   It failed to incorporate a 40% MOS;[2] and

4.   It failed to include an implementation plan that provides "reasonable

assurances" that all targeted pollutant load reductions would be reached.

*Id*. The members of the Coalition are substantially impacted by the resolution of

these assertions in the following ways:

1.   Because TMDLs are akin to "pollution diets," how the "pieces of the

allocation pie" are distributed among the various PSs and NPSs, and the size

of the piece apportioned to each source, impact *all* sources that "make up the

allocation pie."  Whether CAFOs receive specific limits for the discharge of

---

[1] Dissolved reactive phosphorus refers to the phosphorus that is dissolved in water (meaning not attached to particles), and thus more readily available for plant uptake, whereas total phosphorus includes all phosphorus, regardless of form (both dissolved in water and attached to particles).  *See* Maumee Watershed Nutrient TMDL FAQs, September 29, 2023 (available at https://www.epa.gov/system/files/documents/2023-09/maumee-watershed-nutrient-tmdl-faqs.pdf.) (last accessed October 29, 2025).

[2] A MOS is included in the TMDL load calculation to account for uncertainty in predicting how well pollutant reductions will result in achieving WQSs.  *See* U.S. EPA Overview of Total Maximum Daily Loads (TMDLs) (available at https://www.epa.gov/tmdl/overview-total-maximum-daily-loads-tmdls) (last accessed October 29, 2025).

phosphorus, and whether load allocations for NPSs are specifically apportioned among all NPSs of phosphorus, directly impacts (*i.e.*, reduces) the "slice of the allocation pie" the members of the Coalition will receive in their individual discharge permits.

2.  For PS dischargers like the members of the Coalition, the technology to treat wastewater to achieve effluent limits for total phosphorus is *substantially* less expensive to build, operate, and maintain than the technology needed to achieve effluent limits for DRP. If Plaintiffs' request for relief is granted and DRP limits are imposed in Coalition members' permits, it would have a significant impact on their financial conditions and ultimately on their rate payors and customers.

3.  A 40% MOS requested by Plaintiffs, compared to the 3% MOS that Ohio EPA determined to be sufficiently protective, (a) substantially reduces each "slice of the allocation pie," which increases the pollutant reductions required to be achieved by each member of the Coalition, thereby driving up its costs, and (b) severely restricts the ability of the members to expand their treatment systems to meet increasing populations (local governments) or increasing production demands (industry), as well as other potential growth opportunities for the watershed.

4.  Because a TMDL is meant to be an iterative process, and because nutrient

enrichment conditions are impacted by a host of factors, including physical, chemical, biological, geological, hydrological, and weather-related elements, an implementation plan whose "reasonable assurances" are overly strict, particularly in terms of timetables, will potentially lead to a premature and unnecessary reapportionment of the allocation pie, resulting in more stringent allocations and corresponding permit limits for the PSs, including the members of the Coalition.

Because of the potentially significant adverse outcome(s) from Plaintiffs' challenge, the Coalition filed its MTI on October 31, 2024, asking to be named as an additional Defendant.  MTI, RE 38, PAGEID # 1503.  It moved for intervention as of right and, in the alternative, for permissive intervention, under Fed. R. Civ. Pro. 24(a) and (b), respectively.  *Id*.  Before filing the MTI, the Coalition's counsel contacted counsel for U.S. EPA to ask whether it would oppose intervention, to which counsel indicated an opposition to intervention as of right, but no position with respect to permissive intervention.  *Id*.

In its MTI, the Coalition explained in considerable detail the ways in which its members' interests were both substantial and would be directly impacted by Plaintiffs' challenge to the Maumee TMDL.  *Id*. at PAGEID # 1505-1508.

Using the standard set forth in Fed. R. Civ. Pro. 24(a) for intervention as of right, supplemented by this Court's precedents interpreting that standard, the

Coalition explained why its members' interests constituted substantial legal interests; why those interests would potentially be impaired absent intervention; and why it was reasonable to conclude that U.S. EPA may not adequately represent those interests. *Id.* at PAGEID # 1510-1518.

With respect to why the Agency may not adequately represent these interests, the Coalition presented several reasons, including two very specific factual grounds: (1) recent instances where U.S. EPA formally alleged that Ohio EPA had not issued sufficiently stringent limits for the *same* nutrient (total phosphorus) in permits issued to local governments discharging to the *same* body of water (Western Basin of Lake Erie) that is the focal point of the Maumee TMDL;[3] and (2) the fact that the Coalition included in its proposed Answer additional defenses not raised by U.S. EPA in its Answer, ones that would, if successful, impact the District Court's jurisdiction to hear Plaintiffs' Complaint or grant the relief they request.[4]

Finally, using the standard expressed in Fed. R. Civ. Pro. 24(b) for

---

[3] *See Id.* at PAGEID # 1511 n. 5, and 1513; *and see* Coalition's Supplemental Memorandum in Support of its MTI, RE 55, PAGEID # 1971 n. 10 (summarizing disputes between the two Agencies in 2021 and 2024 over the stringency of phosphorus limits for the Cities of Euclid and Port Clinton, Ohio, both discharging to the Western Basin of Lake Erie).

[4] *See* MTI, RE 38, PAGEID # 1516-1518, 1575-1576 (additional defenses based on (i) Plaintiffs' failure to avail themselves of their state law remedy to challenge Ohio EPA's issuance of the Maumee TMDL, (ii) the lack of authority under the APA to challenge state law decisions, and (iii) the limited standard under the CWA for U.S. EPA's review of state-issued TMDLs).

permissive intervention, the Coalition demonstrated that its MTI was timely; its proposed Answer shared many questions of fact and law with Plaintiffs' Complaint and U.S. EPA's Answer; its intervention would not prejudice any party or cause undue delay; and U.S. EPA did not object to permissive intervention by the Coalition as an additional Defendant.  MTI, RE 38 at PAGEID # 1503, 1518-1519. *See also* Coalition's Supplemental Memorandum in Support of its MTI, RE 55, PAGEID # 1971-1972 (explaining options taken from similar multi-party appeals often used to reduce unnecessary or duplicative briefs by the parties, and avoid potential interference with settlement opportunities).

Despite this demonstration, the District Court denied the Coalition's MTI as of right and permissive intervention.  *See* Memorandum Opinion and Order, RE 68, PAGEID # 2083-2084.  The only reason given to deny intervention as of right was the Court's finding that the Coalition failed to demonstrate that U.S. EPA may not adequately represent its members' interests.  *Id*. at PAGEID # 2082-2083.  To support its finding, the District Court deemed the Coalition's additional defenses to lack any merit whatsoever, but offered little or no discussion to explain its basis for this conclusion.  *Id*.  And the District Court did not consider any of the other reasons provided by the Coalition to demonstrate why it was reasonable to believe the Agency may not adequately represent the members' interests.  *Compare Id*. at PAGEID # 2083 *with* Coalition's MTI, RE 74 at PAGEID # 1511-1515 *and with*

Coalition's Supplemental Memorandum, RE 55 at PAGEID # 1971 n. 10 (comparing the District Court's finding to the list of reasons the Coalition provided).

Finally, in a single paragraph, the District Court denied permissive intervention without finding that (1) the MTI was untimely, (2) the Coalition's proposed Answer did not share common issues of fact and law with Plaintiffs' Complaint and U.S. EPA's Answer, or (3) intervention would cause undue prejudice to an existing party. Memorandum Opinion and Order, RE 68 at PAGEID # 2084. The only rationale was the Court's statement that the Coalition's explanation how its members would be adversely impacted if intervention were denied somehow constituted arguments that would unnecessarily complicate and delay the proceeding, a statement that is incorrect and, if allowed to stand, would set a standard for permissive intervention that no intervenor could meet. *Id*.

## SUMMARY OF ARGUMENT

As an association of Ohio's local governments and businesses holding discharge permits issued by Ohio EPA containing nutrient (*i.e.*, total phosphorus) limits, the Coalition's interests (and those of its rate payors and customers) will be substantially impacted if Plaintiffs prevail in their assertion that the Maumee TMDL's nutrient allocations should have reflected a tenfold higher MOS, and imposed a new, unprecedented allocation for a different pollutant (DRP). *See*

Complaint, RE 1, PAGEID # 27-29.  The Coalition timely filed a MTI to protect these interests under Fed. R. Civ. Pro. 24, and to present additional defenses not raised by the Agency that may impact the District Court's jurisdiction to hear Plaintiffs' Complaint.

Disregarding settled precedent that Fed. R. Civ. Pro. 24's standards are to be liberally construed in favor of proposed intervenors, the District Court abused its discretion by narrowly construing the standard for intervention of right, holding that merely because U.S. EPA and the Coalition are presumed to have the same ultimate objective – to uphold the Maumee TMDL – the Agency must be presumed to adequately represent the Coalition's interest.

The Court reached this conclusion despite the Coalition's demonstration that this presumption was inappropriate for several reasons, including: (1) recent challenges by U.S. EPA to the stringency of nutrient limits issued by Ohio EPA for Lake Erie basin permitholders, incidents that showed that the interests of the Coalition and U.S. EPA may not fully align, and in fact may diverge at some point; and (2) the Coalition's presentation of defenses not raised by U.S. EPA – two circumstances deemed under this Court's precedents to negate the applicability of a presumption of adequate representation.

The District Court also abused its discretion by denying permissive intervention when there was no dispute that the Coalition's MTI met the applicable

11

criteria: it was timely; its proposed Answer shared many questions of fact and law in common with Plaintiff's Complaint and U.S. EPA's Answer; the existing Defendant (U.S. EPA) did not oppose permissive intervention; and no party asserted that permissive invention would cause undue prejudice or delay.  To support its denial in the face of these undisputed facts, the District Court conflated an explanation of how the Coalition would be adversely impacted were Plaintiffs' claims and requests for relief to prevail into purported "arguments that would unnecessarily complicate and delay the proceedings," a misstatement of fact and a standard not found in Fed. R. Civ. Pro. 24(b).

While district courts have discretion when deciding a motion to intervene, their discretion does not include ignoring this Court's precedents that instruct them how to apply the standards in Fed. R. Civ. Pro. 24.  For that reason, the July 2, 2025, ruling from the District Court was clearly erroneous and constituted an abuse of discretion, and should be reversed.

## STANDARD OF REVIEW

When reviewing an appeal of the denial of a motion to intervene as of right under Fed. R. Civ. Pro. 24(a), the Court of Appeals reviews the determination of timeliness using an abuse of discretion standard, and the remaining elements *de novo*.  *See e.g. Michigan State AFL-CIO v. Miller*, 103 F. 3d 1240, 1245 (6th Cir. 1997).  And when the denial is for permissive intervention under Fed. R. Civ. Pro.

24(b), the Court's review of all elements is with an abuse of discretion standard, except for the question whether the proposed intervenor's claims or defenses shared common questions of law or fact with the action, in which case the review is effectively a *de novo* determination whether a least one shared question of law or fact was demonstrated.  *Id*. at 1248.

## ARGUMENT

**A.    The District Court Abused its Discretion when it Found that (1) U.S. EPA is Presumed to Adequately Represent the Interests of the Coalition's Members and (2) the Coalition had not Sufficiently Rebutted the Presumption.  Intervention as of Right Should have been Granted.**

The elements for intervention as of right under Fed. R. Civ. Pro. 24(a) are a demonstration of timeliness and a substantial interest in the proceeding that is the subject of the action, an interest that is so situated that disposition of the action without intervention may impair or impede it, and existing parties would not adequately represent the interest.  *Id*.  In addition, the interest must be a substantial legal interest, which is a case-specific determination.  *See e.g. Coalition to Defend Affirmative Action v. Granholm*, 501 F. 3d 775, 783 (6th Cir. 2007).  And although the question of whether the interest is "substantial" is case-specific, this Court has held that an organization has a substantial legal interest when its interests are greater than that of the general public.  *See e.g. Grutter v. Bollinger*, 188 F. 3d 394, 398-399 (6th Cir. 1999); *Miller*, *supra*, 103 F. 3d at 1246-1247.

The District Court did not contest the timeliness of the Coalition's MTI or its substantial legal interests in the outcome of the proceeding below.  Instead, the Court's sole basis to deny intervention as of right was its finding that U.S. EPA warranted a presumption that it would adequately represent the Coalition's interests, and the Coalition had not rebutted the presumption.  Memorandum Opinion and Order, RE 68, PAGEID # 2078, 2082-2083.  Both of these findings were clearly erroneous.

### 1.     The Interests of the Coalition and U.S. EPA are not Sufficiently Aligned to Justify a Presumption of Adequate Representation.

If proposed intervenors have the same ultimate objective as the party(ies) on whose side of the case they seek to join, there is a general rule that a presumption exists that the party(ies) *may* adequately represent the intervenors' interests.  *See e.g. United States v. Michigan*, 424 F. 3d 438, 443-444 (6th Cir. 2006); *Bradley v. Milliken*, 828 F. 2d 1186, 1192 (6th Cir. 1987).  But that general rule has important limitations, which the District Court overlooked or misapplied.

First, the presumption does not exist if (1) there is a legitimate reason to believe that the interests of the intervenors and the party(ies) on whose side intervention is sought may diverge during the proceeding, or (2) the intervenors raise claims or defenses not raised by the party(ies) on whose side intervention is sought.  *See e.g. NE Ohio Coalition for Homeless and Service Employees Int'l Union Local 1199 v. Blackwell*, 467 F. 3d 999, 1008 (6th Cir. 2006) (finding

presumption inapplicable when the interests could potentially diverge, even though the parties were aligned on the same side of the case); *Buck v. Gordon*, 959 F. 3d 219, 224-226 (6th Cir. 2020) (reversing denial of MTI because intervenors raised defenses the State of Michigan forewent, and thus the presumption of adequate representation did not apply).

The Coalition demonstrated both limitations in its MTI. The Coalition (1) summarized two very recent disputes between U.S. EPA and Ohio EPA over the stringency of total phosphorus limits in permits issued by the latter to the Cities of Euclid and Port Clinton, Ohio, both of which discharge to the Western Basin of Lake Erie, and (2) explained why these disputes show a meaningful risk that the interests of U.S. EPA and the Coalition may diverge, because the members also hold permits from Ohio EPA with total phosphorus limits, and discharge to waterbodies feeding into the same Western Basin. *See* Coalition's MTI, RE 38, PAGEID # 1511 n. 5, 1514; Coalition's Supplemental Memorandum in Support of MTI, RE 55, PAGEID # 1971 n. 10 (summarizing 2021 and 2024 disputes over whether the permits for the Cities contained limits too lenient to avoid contributing to potential nutrient impairment in the Western Basin).

It is certainly possible that U.S. EPA will fulsomely defend the total phosphorous allocations in Ohio EPA's Maumee TMDL. But the two recent disputes between the Agencies over the stringency of limits issued for the same

pollutant to two local governments discharging to the same Western Basin of Lake Erie make it more than reasonable to question whether, and how vigorously, U.S. EPA will defend the Plaintiffs' challenge to the stringency of the allocations for the same pollutant in the Maumee TMDL.

Given this recent history, there can be no doubt that the Coalition's interests and those of U.S. EPA *might* diverge during the appeal, despite both ostensibly supporting the Maumee TMDL. Yet the District Court either overlooked or ignored the Coalition's demonstration. *See* Memorandum Opinion and Order, RE 68, PAGEID # 2082-2083.

In addition, in its proposed Answer, the Coalition raised several defenses not raised by U.S. EPA, and in the MTI explained in detail their legitimacy, including: (1) the lack of authority for Plaintiffs to challenge under the APA the state-law decisions of Ohio EPA in the Maumee TMDL; (2) the exclusive original jurisdiction of Ohio's Environmental Review Appeals Commission under O.R.C. § 3745.04(B) to hear challenges to Ohio EPA's decisions in the Maumee TMDL, and Plaintiffs' failure to exhaust that remedy using their appeal right under O.R.C. § 6111.564(A); and (3) the CWA's limited standard of review for U.S. EPA's review of the Maumee TMDL, which does not permit the Agency to disturb Ohio EPA's substantive decisions underlying the Maumee TMDL. *See* Coalition's MTI, RE 38, PAGEID # 1516-1518, 1575-1576. 5, 1514; Reply in Support of MTI, RE

54, PAGEID # 1952; and Supplemental Memorandum in Support of MTI, RE 55, PAGEID # 1963-1970.

These additional defenses were not "invented" merely to support intervention. Each was thoroughly researched and supported with extensive citations to supporting statutory and case authority, and each has substantial merit. *Id*. Several go to the heart of Plaintiffs' claims and whether the District Court has jurisdiction or authority to hear them or provide the requested relief. *Id*.

The District Court responded by ignoring or mischaracterizing the additional defenses, treating them as if they were borderline frivolous, despite a detailed explanation provided for each defense, supported with statutory and case authority. *Compare Id. with* Memorandum Opinion and Order, RE 68, PAGEID # 2082-2083. Such treatment was clearly erroneous.

U.S. EPA obviously cannot be presumed to represent the Coalition's interests in having these defenses adjudicated, when the Agency has not raised them. The District Court erred when it found that U.S. EPA is presumed to adequately represent the Coalition's interests under these circumstances. *See Buck, supra,* 959 F. 3d at 224-226 (reversing denial when intervenor presented defenses forewent by the State).

**2.  Even if the Interests are Sufficiently Aligned to Support the Presumption of Adequate Representation, the Coalition Provided Several Reasons that Rebutted the Presumption.**

The second limitation on the general rule that, when intervenors and the party(ies) on whose side intervention is sought share a common ultimate objective, the party(ies) are presumed to adequately represent the intervenors' interests, is the burden required to overcome the presumption.  Even if the District Court had been correct in affording U.S. EPA a presumption in this case, it failed to follow this Court's precedents when deciding whether the presumption had been adequately rebutted.

This Court has said that the standards for intervention are to be liberally construed to support intervention.  *See e.g. Purnell, supra*, 925 F. 2d at 950.  And with respect to the burden of proof to overcome a presumption of adequate representation, the U.S. Supreme Court has held that the burden is minimal.  *See Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10 (1971) (the burden to show that representation of the proposed intervenor's interest "may be" inadequate "should be treated as minimal").

The District Court's treatment of the Coalition's request for intervention as of right failed to comply with these standards.  The District Court changed the standard from a "minimal" burden to show that the representation "may not" be adequate, to a "heavy" burden to show that the representation "is not" adequate.

18

And its treatment of the fact that the Coalition shares the same ultimate goal as U.S. EPA (presumptively) to uphold the Maumee TMDL as if that fact were the controlling element regarding adequacy of representation is not only inconsistent with this Court's precedent (*e.g. Blackwell*, *supra*, 467 F. 3d at 1008), such treatment would effectively be the death knell to most, if not all, interventions as of right because, rarely, if ever, would a proposed intervenor not share the same ultimate goal as the party(ies) on whose side invention is sought.

As demonstrated above, the Coalition presented several valid reasons why U.S. EPA could not be presumed to adequately represent the members' interests, and supported them with citations to the Agency's own webpage.  And with respect to the Coalition's additional proposed defenses, they were supported with detailed discussion and legal citations.  The fact that U.S. EPA has not raised them should have ended any debate about the adequacy of the Agency's representation. *See Buck, supra,* 959 F. 3d at 224-226.

For these reasons, even if a presumption of adequacy applied to U.S. EPA in this case, the Coalition more than met its "minimal" burden to rebut that presumption.  Therefore, intervention as of right should have been granted.

**B.      The District Court Abused its Discretion when it Found that the Coalition's Explanation how its Members' Interests would be Adversely Impacted if Intervention were Denied Constituted Claims or Arguments that Would Unduly Complicate or Delay Plaintiffs' Challenge.  Even if Intervention as of Right was Properly Denied, Permissive Intervention Should have been Granted in the Alternative.**

The District Court also abused its discretion by denying permissive intervention to the Coalition.  Its denial was limited to a single paragraph in a 13-page decision.  Memorandum Opinion and Order, RE 68, PAGEID # 2084.  With respect to the standard in Fed. R. Civ. Pro. 24(b) for permissive intervention, the District Court did not find that the Coalition's MTI was untimely; its proposed Answer did not share questions of fact and law with Plaintiff's Complaint and U.S. EPA's Answer; the existing Defendant (U.S. EPA) on whose site intervention was sought opposed permissive intervention; or that existing parties demonstrated that permissive invention would cause undue prejudice or delay.  *Id.*

The only explanation the District Court gave to support a denial was its finding that the Coalition's explanation how its members would be adversely impacted constituted "arguments that would unnecessarily complicate and delay the proceedings."  *Id.*  Such finding was a clear misstatement of fact, and invoked a standard for permissive intervention not found in Fed. R. Civ. Pro. 24(b).

The Coalition's description of how its members could be adversely impacted by a ruling that overturns the Maumee TMDL and orders the modifications requested by Plaintiffs (*see* Complaint, RE 1, PAGEID # 38-39) is nothing more

than a recitation of the members' substantial legal interests that would potentially be adversely affected. *See* Fed. R. Civ. Pro. 24(a). It is not a "claim" or "argument" upon which the Coalition seeks relief in its proposed Answer. *See* MTI, RE 38, PAGEID # 1522-1576 (Coalition's proposed Answer).

Furthermore, Plaintiffs seek more than just to overturn U.S. EPA's approval. They want the District Court to order U.S. EPA to make specific changes to the Maumee TMDL. *See* Complaint, RE 1, PAGEID # 38-39. How such changes could impact intervenors is clearly a relevant factor to the determination of the scope of relief to be awarded to Plaintiffs should they prevail. Thus, any evidence that might be introduced relating to the potential impacts of a Court order granting the relief requested by Plaintiffs cannot possibly be said to unduly complicate or delay the proceeding. For that reason, the District Court's finding that the Coalition's explanation how its members could be adversely impacted would complicate and delay the proceedings is not merely a misstatement. It is an erroneous one as well, due to the scope of relief being requested.

Conflating and mischaracterizing the Coalition's explanation of potential impacts on its member in order to support denying permissive intervention, when the criteria in Fed. R. Civ. Pro. 24(b) for such intervention were clearly met, was an abuse of the District Court's discretion. Permissive intervention should have been granted as an alternative to intervention as of right.

**C.    The District Court's Denials of the Coalition's Motion to Intervene and that Filed by the Agricultural Trade Associations Cannot be Reconciled with the District Court's Grant of Intervention to Three Environmental Trade Organizations.**

The District Court decided not only the Coalition's MTI, but also MTIs filed by a group of agricultural trade organizations ("ag trade groups"), and a group of environmental trade organizations ("env. trade groups").   *See* Memorandum Opinion and Order, RE 68, PAGEID # 2086.   *See also* RE 19, 19-1, and 19-2 (ag trade groups' MTI) and RE 46 (env. trade groups' MTI).   Using the same rationale (*i.e.*, adequacy of representation), the District Court *denied* the MTIs of the Coalition and the ag trade groups, both of which sought to intervene on the side of U.S. EPA to defend the Maumee TMDL, but *granted* the MTI of the env. trade groups, who sought to intervene on the side of Plaintiffs City of Toledo, Lucas County and the Environmental Law & Policy Center.   Memorandum Opinion and Order, RE 68, PAGEID # 2086.

It is not possible to reconcile the same rationale (*i.e.*, adequacy of representation) to support the denial of intervention as of right for both proposed intervenors that sought to join the case as a Defendant,[5] yet, at the same time, support the grant of intervention as of right to three env. trade groups that sought to intervene as additional Plaintiffs.

_____

[5] The rationale for denying the MTIs of the Coalition and the ag trade groups is almost identical.  *Id*. at PAGEID # 2078-2084.

On one hand, the District Court found that the three env. trade groups sufficiently rebutted the Plaintiffs' presumption of adequate representation of their interests because the three groups raised additional grounds to overturn the Maumee TMDL not raised by the three existing Plaintiffs, without the Court conducting *any* assessment of the potential merits of those grounds. *Id*. at PAGEID # 2084-2085.

On the other hand, for the Coalition's proposed additional defenses not raised by U.S. EPA, each of which had been explained in detail with supporting citations to statutory and case authority, the District Court attacked them with vigor, summarily concluding that they lacked any merit, and thus were insufficient to overcome U.S. EPA's presumption of adequate representation. *Id*. at PAGEID # 2083-2084.

The District Court's rationale for denying the Coalition's MTI as of right while granting that of the three env. trade groups cannot be reconciled. It further demonstrates the arbitrariness of the District Court's decision, and the abuse of its discretion, when it denied the Coalition's MTI.

## CONCLUSION

For the foregoing reasons, the District Court erred when it denied the Coalition's MTI in the proceeding below, and its decision constituted an abuse of discretion. The Court of Appeals should therefore reverse the denial and grant

intervention as of right or permissive intervention to the Coalition, and then remand the case for further proceedings in accordance with the Court of Appeals' decision.

Respectfully submitted,

*/s/ Stephen P. Samuels*
Stephen P. Samuels (007979)
Stephen N. Haughey (0010459)
Christina Wieg (0098693)
**FROST BROWN TODD LLP**
10 West Broad Street
Columbus, OH 43215-3484
(614) 371-8042
ssamuels@fbtlaw.com
shaughey@fbtlaw.com
cwieg@fbtlaw.com
*Counsel for the Maumee Coalition II Association*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

It is hereby certified that the Brief of the Appellant Maumee Coalition II Association complies with (1) the type-volume limitation of Fed. R. App. Pro. 32(a)(7), because the Brief contains 6416 words, including the parts exempted by Fed. R. App. Pro. 32(f), and (2) the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because the brief was composed using Microsoft Word, Times New Roman, proportionately-spaced 14-point font.

Dated:  November 3, 2025                 */s/  Stephen S. Samuels*

# CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2025, the foregoing was electronically filed with the Clerk of U. S. Court of Appeals for the Sixth Circuit by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Stephen S. Samuels*

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RECORD ENTRY | DESCRIPTION | DATE | PAGE ID # RANGE |
|---|---|---|---|
| 1 | Plaintiffs' Complaint | 5/01/2024 | 1-40 |
| 19, 19-1, 19-2 | Agricultural Association's MTI as Additional Defendant, and Proposed Answer | 9/20/2024 | 205-224 |
| 38 | Coalition's MTI as Additional Defendant, and Proposed Answer | 10/31/2024 | 1503-1574 |
| 46 | Environmental Trade Groups' MTI as Additional Plaintiff, and Proposed Complaint | 12/6/2024 | 1835-1920 |
| 54 | Coalition's Reply in Support of MTI | 12/9/2024 | 1944-1956 |
| 55 | Coalition's Supplemental Memorandum in Support of MTI | 1/17/25 | 1957-1973 |
| 68 | District Court's Memorandum Opinion and Order | 7/2/2025 | 2074-2086 |
| 73 | Coalition's Notice of Appeal | 8/1/2025 | 2148-2149 |